LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

MARY WEST, *on behalf of herself and
all others similarly situated*,

        Plaintiff,

    -against-

THEATRE DEVELOPMENT FUND, INC.

        Defendant,

Case No.:

**CLASS ACTION COMPLAINT**

---

Plaintiff, MARY WEST (hereinafter "Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorney, hereby files this Class Action Complaint against THEATRE DEVELOPMENT FUND, INC. (hereinafter "TDF" or "Defendant"), and states as follows:

**INTRODUCTION**

1.    This class action seeks to end the systemic civil rights violations committed by Defendant against blind and visually impaired individuals in New York and across the United States. Defendants are denying blind and visually-impaired individuals equal access to the services it offers in participating theatres.

1

2. Many individuals who are blind or visually-impaired enjoy watching shows in theatres and engaging in this classic part of American cultural life. Audio description technology and other accessibility features are essential to the live theatre experience for blind individuals, so that they will know what is happening in scenes without dialogue or scenes that include significant visual elements.

3. To enjoy shows as sighted viewers do, blind and visually-impaired individuals use audio descriptions. A blind individual wears a headset and listens to audio descriptions that contain narration of the visual elements of the scene synchronized with the show. Without audio descriptions, blind theatregoers are unaware of what is happening in scenes without dialogue and may misunderstand the meaning of other scenes. Thus, audio description is essential for the blind viewer's live theatre experience and is among the services provided through Defendant's TDF Accessibility Programs (hereinafter "TAP").

4. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the Americans with Disabilities Act. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers that deny blind persons the accommodations, advantages, facilities, privileges and services of places of public accommodation, such as live musical theatres.

5. Plaintiff has held a regular paid TDF membership since 2015. A TDF membership provides discounts and notices on hundreds of shows, not all of which are accessible for blind individuals. However, Plaintiff and other blind class members still enjoy going to such shows even when audio description services are not available. In December 2016, Plaintiff was surprised to discover her TAP membership (which provides her notice and access to tickets of a limited number of shows with descriptive services for the blind (usually, fewer than five)) had been removed and she had not been notified (see attached Exhibit D). On September 3, 2017, a friend of Plaintiff's contacted Fran Polino, Associate Director of TAP, on her behalf to inquire about her TDF membership (see attached Exhibit A). Plaintiff was interested in adding

back TAP to her membership to receive announcements of audio-described shows as well as access to audio-description services. In brief, after several e-mail exchanges with Plaintiff (see attached Exhibits B-D), Defendant has denied Plaintiff and blind individuals access to both TDF and TAP, forcing disabled theatregoers to choose one membership or the other. Unless Defendant remedies this barrier to dual-membership of TDF and TAP, Plaintiff and Class members will continue to be unable to enjoy the services provided in each membership, such as access to a wide variety of shows with audio descriptions.

6. Through its failure to allow members to hold both TDF and TAP memberships, Defendant is excluding blind individuals from full and equal access to its services.

## JURISDICTION

7. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.* ("ADA").

## VENUE

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c).

9. Defendant is registered to do business in New York State and has been doing business in the Southern District of New York.

10. Defendant is subject to personal jurisdiction in the Southern District of New York. Defendants have been and are committing a substantial part of the acts alleged herein in the Southern District of New York, has been and are violating the rights of consumers with disabilities in the Southern District of New York, and has been and is causing injury to consumers with disabilities in the Southern District of New York. A substantial part of the acts and omissions giving rise to Plaintiff's claims have occurred in the Southern District of New York.

## PARTIES

11.     Plaintiff is blind and is a resident of New York County, New York State. Plaintiff contacted Defendant to inquire about adding back a TAP membership to her TDF membership. However, Defendant informed Plaintiff that members cannot hold both TAP and TDF memberships "per [its] system" and "technological logistics" (see Exhibit D). Plaintiff seeks full and equal access to the goods and services provided by Defendants through both TAP and TDF.

12.     Defendant is America's largest performing arts non-profit corporation organized under the laws of New York, with a process of service address at 1501 Broadway, New York, New York 10036. Created in 1968, TDF provides support to Broadway, Off-Broadway, and off Off-Broadway music and dance productions. Its mission is to make theatres affordable and accessible to all theatregoers. Specifically, its free TAP service accommodates theatregoers who are hard of hearing or deaf, visually impaired or blind, unable to climb stairs, and those who require wheelchair locations. TAP provides features such as opportunities to reserve audio description headsets and to receive notifications of accessible shows. According to Defendant's Frequently Asked Questions webpage, customers cannot hold both TDF and TAP memberships concurrently (see Figure 1).[1]

**If I am already on TDF's regular membership list, can I also join TAP?**
No, you can only be a member of TAP OR REGULAR TDF-NOT BOTH! If you are a member of our general TDF membership program and would like to switch over to TAP, please send an email to tap@tdf.org indicating that you would like to change your membership. You will need to include your TDF membership ID# and fax or mail proof of your disability.

*Figure 1*

13.     Defendant has denied Plaintiff the full use and enjoyment of the facilities, goods, and services associated with its TDF and TAP memberships by prohibiting dual-memberships.

---

[1] Theatre Development Fund, *TAP FAQ* (2017) https://www.tdf.org/nyc/89/TAP-FAQs (last visited on September 26, 2017).

## CLASS ACTION ALLEGATIONS

14. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2), and alternatively, (b)(3), on behalf of all blind individuals and individuals with a visual impairment that substantially limits the major life activity of seeing, in the United States, who attempt to enjoy the theatre.

15. The persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

16. There are common questions of law and fact involved affecting the parties to be represented in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' goods, facilities, and services due to the lack of provision and maintenance of audio description required by law for persons with disabilities.

17. The claims of the named Plaintiff are typical of those of the class.

18. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, including class actions brought under the Americans with Disabilities Act.

19. Class certification of the claims is appropriate pursuant to Fed. R. Civ P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

20. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

21. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the Class, unless otherwise indicated.

**FACTUAL ALLEGATIONS**

22.     Defendant provides TDF and TAP memberships to the public. TDF offers discounted tickets to hundreds of shows, and TAP offers tickets to a limited variety of shows with audio descriptions and accessibility features for the handicapped (usually, five or fewer). If a visually impaired person buys tickets through TAP, his or her audio description device is reserved for them at the theater. The same tickets, if purchased through a TDF membership, would not allow Plaintiff to reserve an audio device. Plaintiff sought the opportunity to be eligible to receive announcements of shows that are audio described through TAP while retaining her TDF membership, which provides her with discounted tickets to a larger selection of shows. Defendant has denied Plaintiff this dual-membership opportunity.

23.     Despite its strong record of providing discounted tickets and other services to thousands of Americans, Defendant fails to provide equivalent services to individuals who are blind or visually-impaired. Defendant has refused to make TAP memberships available to disabled members of TDF, thus rendering it impossible for blind theatregoers to access the many audio descriptions available in a TAP membership while holding a TDF membership. Further, Plaintiff is unable to purchase tickets through TAP while holding her TDF membership.

24.     This case arises out of Defendants' policy and practice of denying blind and visually-impaired individuals access to its showings through TAP and TDF.

25.     Numerous individuals who are blind or visually-impaired enjoy going to live theatres and have attempted to access Defendants' services. These individuals have repeatedly been unable to fully and equally enjoy shows due to the inaccessibility of a dual TDF/TAP membership.

26.     The denial of dual TDF/TAP memberships has deterred and will continue to deter blind and visually impaired people from attending accessible shows. Defendants are violating basic equal access requirements under the ADA by failing to provide membership options that accommodate disabled customers.

## FIRST CAUSE OF ACTION

**Violation of Title III of the Americans with Disabilities Act (42 U.S.C. § 12181,** *et seq.***)**
**(on Behalf of the Named Plaintiff and the Class)**

27. Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

28. Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a), provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

29. The Website is a public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2). The Website is a service, privilege or advantage of Defendant.

30. Defendant is subject to Title III of the ADA because they own and operate the Website.

31. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I) it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

32. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

33. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

34. Defendant owns and operates www.tdf.org (hereinafter the "Website") which is a place of public accommodation.

35. Defendant excludes Plaintiff from participating in and benefiting from the goods, services, facilities, privileges, advantages, and accommodations of Defendant in violation of Title III. Defendant further violates Title III because it is providing Plaintiff and blind individuals with fewer theatre opportunities than those afforded to its non-disabled members.

36. Under Title III, entities that own, operate, lease, or lease to places of public accommodation must take the steps necessary to ensure that no individuals with disabilities are excluded, denied services, or otherwise treated differently than others because of the absence of auxiliary aids and services, unless doing so would fundamentally alter the services provided or create an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303.

37. It is a violation of Title III for entities that own, operate, lease, or lease to places of public accommodation to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the modification would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

38. By failing to modify practices, policies, and procedures to ensure that audio description service is provided, Defendants are violating Title III.

39. The actions of Defendants were and are in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and regulations promulgated thereunder. Many

8

blind and visually-impaired individuals, including Plaintiff, have been and continue to be denied full and equal access to Defendant's services. Defendant has failed to take the necessary steps to provide full and equal access to blind and visually-impaired patrons, and Defendants' violations of the ADA are ongoing. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

40. Plaintiff is entitled to injunctive relief. 42 U.S.C. § 12188.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### Declaratory Relief

### (on Behalf of The Named Plaintiff and the Class)

41. Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein.

42. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and are informed and believe that Defendant denies, that by failing toprovide dual membership opportunities to its disabled members, Defendant fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*.

43. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. A permanent injunction pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, requiring Defendant to take the steps necessary to provide access to dual-memberships for individuals who are blind or visually-impaired.

2. A declaration that Defendant discriminates against blind and visually-impaired persons by failing to provide blind and visually-impaired individuals, including Plaintiff, with full and equal access to the services, facilities, privileges, advantages, and accommodations of Defendant's services in violation of Title III of the ADA, 42 U.S.C. §§ 12181, *et seq.*

3. An order awarding Plaintiff reasonable attorneys' fees and costs, as authorized by 42 U.S.C. § 12188; and

4. For such other and further relief as the Court deems just and proper.


DATED: October 09, 2017                                LEE LITIGATION GROUP, PLLC

By: ___*/s/ C.K. Lee*_____
      C.K. Lee, Esq.

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

# EXHIBIT A

**From:** Karen Kacen [mailto:kfkacen@verizon.net]
**Sent:** Sunday, September 03, 2017 4:59 PM
**To:** Fran Polino
**Subject:** Interesting Comment and Question

Dear Fran,
My friend Mary West, who's totally blind, expressed her opinion about something regarding TAP that I'd like to share with you. She has a paid membership of TDF for several years. Mary chose not to join TAP since she doesn't need to sit close to the stage. Also TDF offers more shows and they are less expensive than TAP offerings. All of this said, Mary would also like the opportunity to be eligible to get announcements to attend shows that are audio described through TAP as well. I think that she has a very good point. Being completely blind, this type of service would be enormously beneficial to her and many other individuals.

Do you think that it would be possible for Mary and other folks who are totally blind that are TDF members w/a paid membership to be permitted to also attend audio described performances? Perhaps this could be a third type of membership? BTW, being an avid museum-goer attending specialized tours for blind visitors, I've heard this type of comment / question many times. They do have a good point of view. Your thoughts?

Thanks Fran.
Respectfully,

Karen

# EXHIBIT B

**From:** Fran Polino
**Sent:** Wednesday, September 06, 2017 11:40 AM
**To:** Karen Kacen <kfkacen@verizon.net>
**Cc:** Leah Diaz <leahd@tdf.org>
**Subject:** RE: Interesting Comment and Question

Hi again Karen,

Well, I know I wrote to you this morning to let you know that my department would have to discuss this next week before I could get back to you, but we actually found some time for a meeting this morning…

I am going to turn this over to Leah Diaz, our Manager of Accessibility Services.  She will get back to you shortly.

Take care!

Fran
**From:** Leah Diaz [mailto:leahd@tdf.org]
**Sent:** Wednesday, September 06, 2017 12:10 PM
**To:** Fran Polino; Karen Kacen
**Subject:** RE: Interesting Comment and Question

Hi Karen,

Thank you so much for providing feedback from Mary. At this point, the best we can do is put Mary on the email distribution list that would notify her of when audio described performances are. Unfortunately, she would not be able to actually purchase the tickets through TAP at TAP prices but if she were able to get a ticket for the same day through her TDF membership or some other means, she is more than welcome to use a device on the date of the performance. Mary can also go to theatreaccess.nyc, our website in partnership with the Broadway League that lists when all our accessible performances on Broadway happen, and hopefully eventually off Broadway.

Unfortunately the way our system is set up, it does not allow for the duality that you are asking for. Broadway has a new system they are working on installing called Gala Pro. The hope is by next year majority of the Broadway houses will have automated audio description for their shows. Hopefully when this gets off the ground, it will be an option for Mary, and others, to utilize all the services with their TDF membership as long as they don't have specific seating needs.

The difference between Museums, which have stationary exhibits for long periods of time that can be pre-recorded, and theatre, which is live entertainment and can change performance to performance is a factor to consider when creating this type of technology and these types of programs. Please let me know if Mary would like to be added to the email distribution list so she knows when audio described performances happen.

Best,
Leah Diaz
Manager of Accessibility Services
TDF Theatre Development Fund
Tel: 212-912-9770 ext. *382 {please note: you must dial star (*) first}

# EXHIBIT C

**From:** Karen Kacen [mailto:kfkacen@verizon.net]
**Sent:** Thursday, September 07, 2017 12:26 AM
**To:** Leah Diaz <leahd@tdf.org>; Fran Polino <FranP@tdf.org>
**Cc:** Mary West <nightbird11@gmail.com>
**Subject:** RE: Interesting Comment and Question

Hi Leah,

Thank you so much for this information. I've cc-ed Mary on this email so that she can read your advice firsthand. Yes, please add her to your email distribution list to get notices about which shows are being offered for audio described performances.

Question: If Mary decides to see a specific show that's audio described through TAP, and can find that performance also offered on the same day through TDF, what protocol should she follow to get the headset from your colleagues at the theatre On the day of the performance?
Is it okay to pass this information along to other folks in Mary's situation?


Karen

**From:** Leah Diaz [mailto:leahd@tdf.org]
**Sent:** Thursday, September 07, 2017 10:16 AM
**To:** Karen Kacen; Fran Polino
**Cc:** Mary West
**Subject:** RE: Interesting Comment and Question

Hi Karen and Mary,

No problem. I'm happy to help.

If anyone who needs audio description attends a show where we are audio describing they are more than welcome to use a device. Where we are located is really dependent on the space but generally in Broadway houses we are stationed in the front of the orchestra. At the Public Theater we are either right outside the theatre or in their lobby. Generally the ushers and house staff know where to locate us and can point anyone in the right direction.

Please feel free to have anyone reach out to me. For your convenience, below are the current audio described performances we have scheduled.

Measure for Measure (Public Theater) – Saturday, October 14th at 1pm
Tiny Beautiful Things (Public Theater) – Sunday, October 15th at 1pm
Oedipus El Ray (Public Theater) – Saturday, October 28th at 2pm
Sweeny Todd (Barrow Street Theater) – Saturday, November 4th at 2:30pm
Charlie and the Chocolate Factory (Broadway) – Wednesday, November 8th at 1pm ***this is part of our student program but you are more than welcome to use a device should you get a ticket**\*
Illyria (Public Theater) – Saturday, November 18th at 1:30pm
Office Hour (Public Theater) – Saturday, December 9th at 2pm

Please also note that theatres like Signature Theatre and I believe Second Stage have their own audio described programs so I would encourage you to look into their offers as well.

Best,
Leah Diaz
Manager of Accessibility Services
TDF Theatre Development Fund
Tel: 212-912-9770 ext. *382 {please note: you must dial star (*) first}

# EXHIBIT D

-----Original Message-----
**From**: Mary W. [mailto:nightbird11@gmail.com]
**Sent:** Thursday, September 07, 2017 2:08 PM
**To**: Leah Diaz <leahd@tdf.org>
**Subject:** TDF memberships

Dear Leah,
I had a TDF TAP membership for many years.  I then decided to pay a membership fee and subscribe to TDF in order to both contribute to TDF and get access to more shows.  Unfortunately, and unbbknownst to me, my TAP account was closed and I was not notified.  When I tried to use TAP, I couldn't.  I was told by customer service that I cannot belong to both TDF and TAP.  In another words, if I subscribe to TDF I cannot belong to TAP.  TAP members are eligible to receive invitations to described performances even if their only disability is that they are totally blind like myself.  The only difference is that I dared to subscribe to TDF.  ACCORDING to your every-mails to Karen Kacen, in order for me to get the device so I can listen to described shows, I have to hope the show is available to subscribed TDF members, buy my ticket and, when at the theater, try to find whoever has the devices.  And, of course, since I'm not allowed to be a member of TAP, if there are no more devices available at the performance, I'm out of luck because I am unable to reserve one.  I have been disbarred from TAP through no wrongdoing on my part.  If I didn't subscribe to TDF I would still be a member of TAP because I am otherwise eligible.  There is something wrong with this picture.
Sincerely,
Mary West

**From:** Leah Diaz <leahd@tdf.org>
**Subject: RE: TDF memberships**
**Date:** September 7, 2017 at 3:14:07 PM EDT
**To:** Mary W. <nightbird11@gmail.com>
**Cc:** Fran Polino <FranP@tdf.org>

Hi Mary,
I understand your frustration but per our system and the way we are set up we cannot support dual memberships. I see that you emailed our Customer Service Rep back in December when you switched over to TDF and I apologize if they never made clear that you cannot have a dual membership. The technological logistics is virtually impossible. Per my emails with Karen, I never said that you have to hope to get a ticket through TDF, you are more than welcome to get a ticket via another means if you wish and 9 times out of 10 we have more than enough devices for our members and any additional individuals who may want to use a device.
This is in no way a punishment for you switching over to TDF but it is the only way we can provide the service. We try our best to run a program that helps individuals but we are in no way obligated to provide the services. I have given you many different options in order to use an audio described unit. I have offered to notify you of our dates, I have told you about automated systems, I have told you other ways that you can purchase tickets. The fact remains that you cannot have a dual membership at this time. This may change in the future if technology changes but I have no way of knowing that right now.
Best,
Leah Diaz
Manager of Accessibility Services
TDF Theatre Development Fund
Tel: 212-912-9770 ext. *382 {please note: you must dial star (*) first}